James STEENROD, Appellant,

v.

KLIPSCH HAULING COMPANY, INC.,
et al., Respondents.

No. 56308.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 10, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 11, 1990.

Application to Transfer Denied
June 19, 1990.

Eric J. Snyder, Clayton, for appellant.

Donald R. Morin, Brinker, Doyen & Kovacs, P.C., Clayton, for respondents.

SIMON, Chief Judge.

Plaintiff/Appellant, James Steenrod (Steenrod), appeals from a judgment entered on the jury's verdict in favor of Defendant/Respondent, Klipsch Hauling Company, Inc. (Klipsch), on his action to recover for injuries sustained while unloading Klipsch's tank trailer. The claims against the other defendants were either dismissed or settled. The jury assessed 100% of the fault to Steenrod for the injuries sustained.

On appeal, Steenrod sets forth thirteen points of error containing several multiple subparts. Essentially, Steenrod alleges that the trial court erred: (1) in giving jury Instruction No. 7, a converse instruction, because it does not require the jury to make a finding that Steenrod failed to use ordinary care, because it assumes that if its two submissions presented in the instruction are believed, then there is no possibility that Klipsch could have been negligent, and because it does not adequately define the terms, "opened" and "functioning properly;" (2) in granting Klipsch's motion in limine which prohibited Steenrod from presenting evidence that Klipsch knew the safety catch was removed from the dome lid on compartment no. 1 of the tank trailer and that there was no warning about the safety catch on the dome lid, because such facts constituted negligence per se and the pleadings of both parties supported the introduction of such evidence; (3) in failing to permit Steenrod to amend his petition at trial to include a claim of negligence per se for failure to have a safety catch on the tank trailer; (4) in failing to require Klipsch to respond to Steenrod's second request for admissions concerning the absence of a safety catch and warning, in not requiring Klipsch to respond to Steenrod's request for production, and in quashing a deposition subpoena duces tecum for pictures of the tank trailer immediately after the accident; (5) in not permitting Gary Haley to testify concerning statements made to him by Delvin Sylvester, Klipsch's driver, where such statements were not hearsay because they showed that Klipsch, through its agent, knew of the danger of unloading a tank trailer, and such statements also were an admission by a party opponent and an admission against interest; (6) in not submitting Instruction No. A, a verdict director on failure to warn, to the jury where such an instruction was supported both by the evidence presented at trial and Steenrod's pleadings; (7) in excluding Dr. Ben Bayse as an expert wit-

ness at trial resulting in prejudice to Steenrod because Dr. Bayse's testimony would have strengthened Steenrod's case; (8) in issuing a protective order on June 27, 1988 ordering that Klipsch was not required to respond to any discovery requests filed or served by Steenrod after May 27, 1988 and that there would be no further discovery conducted by either party; (9) in allowing Klipsch to read excerpts from Steenrod's deposition out of context without requiring Klipsch to read surrounding statements or allowing Steenrod's attorney to question Steenrod about his statements, which permitted the jury to give greater weight to such statements; (10) in permitting Klipsch to read statements from Steenrod's first amended petition where Steenrod's attorney objected to this reading because he had included the statement in the first amended petition due to Klipsch's false representation that such statements had been made and later abandoned the statements when further investigation indicated that the statement had not been made; (11) in reducing Steenrod's time for closing argument from sixty minutes to thirty-five minutes where that amount of time was insufficient for him to present adequate argument due to the complexities of the case and the amount of information to be presented to the jury; (12) in allowing the jury's verdict to stand because it was against the weight of the evidence; (13) in allowing the jury's verdict to stand where the cumulative effect of the trial court's errors rose to the level of prejudicial error and resulted in an unfair trial and an erroneous verdict. We affirm.

The record on appeal reveals the following facts, which we view in a light most favorable to the verdict. At the time of the incident at issue, Klipsch was in the business of hauling liquid chemicals. Steenrod was a supervisor for Dennis Chemical Company (Dennis). Dennis ordered a load of chemicals from Dow Chemical's representative, Chem Central, to be delivered by Klipsch on November 12, 1980. Klipsch had made deliveries to Dennis for more than twenty years.

The load to be delivered to Dennis arrived at Klipsch's St. Louis terminal from Freeport, Texas, on November 11, 1980. Robert Glaub, the purchasing agent and office manager at Dennis, was told by either Martin Klipsch, Vice–President of Klipsch, or a Klipsch dispatcher that the load was ready for delivery.

Previously, on November 1, 1980, Dennis employees called a strike which resulted in supervisory personnel handling the entire daily operation, including unloading tank trailers when delivered. When Robert Glaub placed the order with Chem Central, he informed them of the strike. He also assured them that if they used a union truck line and the driver would not cross the picket line to make the delivery, Dennis had personnel that were qualified to unload the tank trailer.

Prior to delivery, Klipsch was aware that its driver, Delvin Sylvester, would not cross the picket line. Arrangements were made to have a Dennis employee unload the tank trailer. Klipsch was also told that the employee would be qualified to unload the tank trailer.

George Bigby, Dennis's plant manager, assigned Steenrod to unload Klipsch's tank trailer. Previously, Steenrod had unloaded another of Klipsch's tank trailers and had assisted in unloading eight to ten other tank trailers. Steenrod testified at trial that he initially felt qualified to unload the tank trailer.

Tank trailers may be unloaded by several methods: gravity, liquid pump, and pressure. The gravity method requires that the tank trailer be positioned over the storage facility into which the product is to be placed. The hoses are hooked up and the internal and external valves are opened to allow the product to gravitate into the storage facility. The liquid pump method requires hoses to be hooked up to an onboard pump. The internal valve and the dome lid on the top hatch are opened, and the pump creates a vacuum that unloads the product.

The pressure method uses a compressor to create pressure. A christmas tree valve and external valve are opened and a hose is attached to the tank from the customer's

storage facility. When the appropriate pressure is reached, the internal valve is opened to allow the product to flow through the hose. There are two pressure gauges, one located at the front of the tank and the other next to the dome lid. When the tank is empty of the product, these gauges will gradually return to zero as the built-up pressure escapes through the hose. The valves are then shut off at the customer's end and at the tank end. The compressor is turned off and the hose is unhooked. The christmas tree valve is opened to bleed off the small amount of air pressure that may be left. With this method, the dome lid must be tightly sealed.

On November 12, 1980, Sylvester, Klipsch's driver, arrived at Dennis's gate and turned over the tank trailer to Steenrod. Steenrod drove the tank trailer into Dennis's plant and positioned it over the storage facility. Steenrod sampled the product in the tank trailer by opening the dome lids for each compartment on top of the tank. He remembered seeing a warning sign on the dome lid that said something to the effect, "Danger do not open under pressure." He then proceeded to attempt to unload compartment no. 1 by the liquid pump method. Steenrod was unable to unload by this method because he could not find the necessary fittings. Thereafter, Steenrod decided to use the pressure method.

To build up pressure, Steenrod turned on the compressor and opened up the external and christmas tree valves. While the compressor ran, Steenrod continued to look for fittings so that he could revert to the pump method. About this time, Bigby saw Steenrod and talked to him. According to Bigby, Steenrod said that he was using air pressure to "blow off the load," which did not seem to be working. Bigby recalled Steenrod being concerned that pressure was building in the tank, but that he could not locate the pressure gauge to confirm this fact.

Steenrod's search turned up enough fittings to revert to the pump method. Steenrod proceeded to turn off the compressor, which, at that point, could have been running for up to four hours. According to Steenrod's deposition testimony of December 1981, which was read at trial, he then hooked up one hose, went up on top of the tank to open the dome lid, and "that's when it blew up." Steenrod testified at trial to a conflicting set of events that resulted in the dome lid blowing open. The blast caused Steenrod to be thrown to the ground, which resulted in his injuries.

Subsequently, Steenrod filed an action in negligence against Klipsch on July 6, 1981. After starting trial on this action, the trial court granted his motion to dismiss without prejudice on November 13, 1984. On November 8, 1985, Steenrod refiled his petition in five counts, subsequently amending his petition six times between November 8, 1985 and October 14, 1988. On October 31, 1988, the first day of trial, Steenrod attempted to amend his petition for a seventh time. After objection from Klipsch that an amendment would cause further discovery and delay, the trial court refused leave to amend.

Since several of Steenrod's points on appeal concern the discovery proceedings in his action, we shall set forth these pretrial events. The cause originally was set on the trial docket of January 19, 1988. Due to Steenrod's request for removal of the case because he needed additional time to hire an expert, the cause was reset for trial on February 29, 1988. Thereafter, on January 27, 1988, the cause was removed and reset on the July 5, 1988 docket, again at the request of Steenrod because he was unable to hire an expert.

On January 27, 1988, the court also entered an order requiring Steenrod to disclose all experts and make them available for deposition by opposing counsel. Steenrod partially complied with this order and designated four experts. On April 5, 1988, two experts were stricken pursuant to Klipsch's motion to strike, and a third expert was later withdrawn. On May 4, 1988, the remaining expert, Dr. Ben Bayse, was stricken pursuant to Klipsch's motion on the ground that Dr. Bayse had failed to provide adequate discovery.

On May 27, 1988, Steenrod served a second set of 113 interrogatories on Klipsch. On June 6, 1988, a second set of reformatted interrogatories, a third set of interrogatories, and a request for production were served on Klipsch. On June 10, 1988, Klipsch was served with a request for admissions. Klipsch filed general objections and a motion for a protective order seeking to preclude Steenrod from engaging in discovery at such a late stage in the litigation on June 17, 1988. At a pretrial conference, on June 27, 1988, the motion court granted Klipsch's motion, and ordered that Klipsch was not required to respond to any discovery requests served on or after May 27, 1988, nor could any further discovery be conducted by either party. Subsequent to the pretrial conference, the cause was continued and was reset for trial on October 31, 1988.

On August 1, 1988, Steenrod was granted leave to file a modified request for admissions. Pursuant to court order, Klipsch filed objections and answers to the request for admissions on August 4 and 10, 1988. In particular, Klipsch objected to request for admission no. 14 which requested information regarding a safety catch. The motion court sustained many of Klipsch's objections to the request for admissions, including no. 14, on August 19, 1988. Additionally, the motion court allowed Steenrod to amend several requests and required Klipsch to respond to them. After Klipsch answered the amended request for admission, Steenrod served a third request for admissions on September 22, 1988. Klipsch objected to answering the request, and Steenrod filed a motion for investigation and order regarding amended admission responses and a request for an order requiring answers to the third request for admissions on September 26, 1988. On October 12, 1988, the motion court denied Steenrod's motions and sustained Klipsch's objections.

At the beginning of trial on October 31, 1988, Klipsch made an oral motion in limine to preclude mention or admission into evidence of a safety catch or device on the dome lid of the tank trailer. The trial court sustained the motion. At the close of all

the evidence, the case was submitted to the jury on Steenrod's theory of negligent entrustment. The jury assessed one hundred percent of the fault to Steenrod and returned a verdict in favor of Klipsch. The trial court entered judgment accordingly.

In Steenrod's first point on appeal, he essentially alleges that the trial court erred in giving Instruction No. 7 because the two propositions submitted, if true, did not eliminate the possibility that Klipsch could have been negligent. Steenrod makes additional challenges to Instruction No. 7, but to resolve this point on appeal, we need only give consideration to this allegation. Klipsch contends that Instruction No. 7 was an appropriate affirmative converse instruction under MAI 33.01 (1980) and MAI 33.05(1) (1988).

On his theory of negligent entrustment, Steenrod submitted, and the trial court gave, verdict directing Instruction No. 6:

> In your verdict, you must assess a percentage of fault to Defendant whether or not Plaintiff was partly at fault if you believe:
>
> First: Defendant Klipsch Hauling Company, Inc. entrusted the tractor and trailer either directly or indirectly to Plaintiff, James Steenrod; and
>
> Second: That Plaintiff, James A. Steenrod, was incompetent to unload such vehicle; and
>
> Third: The Defendant, Klipsch Hauling Company, Inc. either knew or should have known that the Plaintiff was not competent to unload the vehicle; and
>
> Fourth: The Defendant was negligent in entrusting or continuing to entrust the vehicle to the Plaintiff when it knew or should have known that he was not competent to unload the vehicle; and
>
> Fifth: As a direct result of Defendant's entrustment of the vehicle and Plaintiff's incompetence in the unloading of the vehicle, Plaintiff was damaged.

Rather than submitting a true converse instruction to Steenrod's negligent entrustment verdict director, Klipsch chose to submit its theory of defense by way of Instruc-

tion No. 7, an affirmative converse instruction, which provides:

> In your verdict you must not assess a percentage of fault to defendants [sic] if you believe that at the time of the occurrence plaintiff opened the dome lid to compartment No. 1 and the pressure gauge for compartment No. 1 functioned properly at that time.

Initially, we note that we review the instruction in a light most favorable to the party offering the instruction and in support of the verdict. *Marti v. Economy Fire & Gas Co.,* 761 S.W.2d 254, 257[5, 6] (Mo.App.1988). We will reverse only when an error of substance with substantial potential for prejudicial effect exists in the instruction. *Fowler v. Park Corp.,* 673 S.W.2d 749, 755[9, 10] (Mo. banc 1984). "When an erroneous instruction is given and the trial results in favor of the party at whose instance it was given, the presumption is that the error was prejudicial." *Grindstaff v. Tygett,* 655 S.W.2d 70, 74[5] (Mo.App.1983) (citations omitted).

■ Affirmative converse instructions are permitted where an ultimate issue is hypothesized which, if true, would defeat plaintiff's claim. *Clark v. Sears, Roebuck & Co.,* 731 S.W.2d 469, 471[2, 3] (Mo.App. 1987). When a defendant submits its theory of the case through a converse instruction, it is not required to directly negate the plaintiff's theory of the case. *Wilson v. Checker Cab Co.,* 431 S.W.2d 122, 123 (Mo.1968). However, an affirmative converse instruction requires independent evidence to support it. *Id.*

Klipsch states in its brief on appeal that it believed Steenrod improperly premised recovery on a theory of negligent entrustment. Therefore, Klipsch submitted Instruction No. 7 to refute what it viewed as Steenrod's only available theory of recovery, negligent failure to furnish a chattel which is reasonably fit and proper. Two ultimate findings were submitted in Instruction No. 7: (1) that Steenrod opened the dome lid for compartment no. 1, and (2) the pressure gauge for compartment no. 1 functioned properly at that time. Klipsch claims that these two propositions, if true,

established that the tank trailer was reasonably fit and proper for its intended use, which thereby precluded Steenrod's recovery.

■ To establish a submissible case in a negligent entrustment action, the plaintiff must show by substantial evidence that: (1) the entrustee is incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was an entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the entrustee as a proximate cause of the harm to entrustee. *Evans v. Allen Auto Rental, Inc.,* 555 S.W.2d 325, 326[1] (Mo. banc 1977). Klipsch did not at trial, nor does it on appeal, allege that Steenrod's verdict director, Instruction No. 6, is improper. Instruction No. 6 and the principles of *Evans* do not require a finding that the tank trailer must be reasonably fit and proper for its intended use. Since the condition of the tank trailer is not an issue in this negligent entrustment action, we fail to see how Klipsch's two propositions, if true, defeated Steenrod's submission that Klipsch's knowing entrustment of the tank trailer to an incompetent person caused the accident. Even if the pressure gauge functioned properly and Steenrod opened the dome lid, these propositions do not disprove that Klipsch entrusted the tank trailer to Steenrod, that Steenrod was incompetent, or that Klipsch knew or should have known that Steenrod was incompetent. Furthermore, the fact that Steenrod opened the dome lid may tend to prove that he was incompetent. By submitting Instruction No. 7, Klipsch failed to state an hypothesized ultimate issue which, if true, defeated Steenrod's claim.

*Wilson v. Checker Cab Co.,* 431 S.W.2d 122 (Mo.1968), illustrates Klipsch's error in submitting Instruction No. 7. There, plaintiff submitted that the taxi driver allowed the taxi to move forward as plaintiff was alighting, thus causing her to fall. *Wilson,* 431 S.W.2d at 123. Defendant, in its submission, hypothesized the ultimate issue of whether plaintiff had alighted from the

taxi and traveled twenty feet before she fell. *Id.* That submitted proposition, if found true by the jury, defeated plaintiff's claim.

▉ Here, Klipsch's submitted instruction does not defeat any of Steenrod's submissions. Thus, Instruction No. 7 was erroneous because it failed to meet the requirements for a proper affirmative converse instruction. Further, once the jury finds in favor of Klipsch, at whose instance the instruction is given, the error is presumptively prejudicial. *Grindstaff*, 655 S.W.2d at 74[5]. Klipsch has not rebutted this presumption, nor does the record indicate a basis to rebut this presumption.

However, Klipsch contends that any instructional error is harmless since Steenrod did not make a submissible case based on his theory of negligent entrustment. We shall defer discussion of submissibility until after resolution of the remaining points on appeal. *See Grippe v. Momtazzee*, 696 S.W.2d 797, 799[3] (Mo. banc 1985).

In his second point on appeal, Steenrod alleges that the trial court erred in granting Klipsch's motion in limine which prohibited Steenrod from presenting evidence concerning the absence of the safety catch on the dome lid. Further, Steenrod contends that this evidence would have established negligence per se.

A court's ruling on a motion in limine is an interlocutory order that "is merely a preliminary expression of the court's opinion as to the admissibility of the evidence." *Manner v. H.E.T., Inc.*, 739 S.W.2d 724, 727[2] (Mo.App.1987) (quoting *Annin v. Bi–State Development Agency*, 657 S.W.2d 382, 385[7, 8] (Mo.App.1983)). The propriety of a sustained motion in limine is to be judged by the admissibility or inadmissibility of the evidence excluded. *Guthrie v. Missouri Methodist Hosp.*, 706 S.W.2d 938, 941[1] (Mo.App.1986). The admission or exclusion of evidence falls within the sound discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion. *Iota Management v. Boulevard Inv. Co.*, 731 S.W.2d 399, 412[7] (Mo.App.1987).

At trial, in response to Klipsch's motion in limine, Steenrod argued that he had sufficiently pleaded facts which would permit admission of evidence regarding the safety catch. In support of his argument, Steenrod cited to Count I, paragraphs 11 and 12; Count II, paragraphs 4 and 5; and Count V, paragraphs 2 and 3 of his Sixth Amended Petition. The trial court found, after consideration of these portions of Steenrod's petition, that the petition failed to plead a missing or absent safety catch. The trial court sustained Klipsch's motion in limine, and Steenrod made an *offer of* proof as to what the inadmissible evidence would have shown.

▉ Our review of the relevant portions of Steenrod's Sixth Amended Petition does not reveal sufficiently pleaded facts which would have permitted admission of evidence regarding a missing safety catch. Specifically, the allegations at issue in the petition state facts concerning Steenrod's incompetency, Klipsch's failure to warn of the dangers associated with unloading a tank trailer, Steenrod's injuries as a result of Klipsch's failure to warn, and the existence of defective or missing parts on the tank trailer, specifically the pressure gauge, pressure relief valve, dog legs, and dome lid. None of these allegations refer to a missing safety catch, nor is the safety catch mentioned in the litany of defective or missing parts. Where a pleader has not alleged a fact, a pleader must not be permitted to prove that fact. *Swan v. Stewart*, 353 S.W.2d 805, 806[2, 3] (Mo.App. 1962). Thus, evidence of a missing safety catch was not admissible as it was not properly pleaded. Point denied.

▉ In his third point, Steenrod contends that the trial court erred in refusing leave to allow him to file a seventh amended petition on the first day of trial. Steenrod wanted to amend his petition to plead that a safety catch required by the Department of Transportation regulations did not exist on the dome lid. He alleges that he did not know of the missing safety catch until the night before trial, and therefore did not need to amend his petition until that time.

Denial of leave to amend a petition is within the sound discretion of the trial

court. *Cento v. Cento,* 703 S.W.2d 595, 596[1] (Mo.App.1986). On review, the trial court's ruling will be overruled only upon a showing of palpable and obvious abuse. *Gierke v. Hayes,* 724 S.W.2d 282, 286[5] (Mo.App.1987). Whether a trial court has abused its discretion in denying leave to amend will be measured in terms of whether justice is furthered or subverted by the course taken. *Cento,* 703 S.W.2d at 596[1].

Here, Steenrod had sufficient opportunity to conduct discovery and include an allegation concerning a missing safety catch in his petition as he previously had amended his petition six times, the most recent amendment occurring two weeks before trial. To allow Steenrod to amend his petition on the day of trial would have caused unnecessary delay and resulting hardship to Klipsch. Thus, the trial court properly refused to grant leave to amend.

■ In his fourth point on appeal, Steenrod contends that the trial court erred in failing to require Klipsch to respond to Steenrod's second request for admissions, request for production, and in quashing a subpoena duces tecum for pictures of the tank trailer. Steenrod has failed to cite any authority in support of this point on appeal. If appropriate precedent is available, it is the appellant's obligation to cite it if he expects to prevail. *Bishop v. Bishop,* 618 S.W.2d 261, 263[2–4] (Mo.App.1981); Rule 84.04(d). Where the point is not one of first impression, nor just a matter of logic or language construction, citation to authority is appropriate. *Ortmeyer v. Ortmeyer,* 680 S.W.2d 384, 396[31] (Mo.App. 1984). A point of error unsupported by citation of relevant authority is deemed abandoned. *Bishop,* 618 S.W.2d at 263[2–4]. Furthermore, we were not directed to, and we have failed to find in the record on appeal, any attempt to make an offer of proof or to make a record before the trial court. It is axiomatic that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Ozark Mountain Timber Products, Inc. v. Redus,* 725 S.W.2d 640, 645[3] (Mo.App.1987).

In his fifth point on appeal, Steenrod claims that the trial court erred in excluding the testimony of Gary Haley concerning statements made by Delvin Sylvester, Klipsch's driver. Steenrod asserts that Haley would have testified that Sylvester stated immediately prior to Steenrod's injuries that Steenrod did not know what he was doing and was going to kill himself. Haley allegedly overheard the comments as he picketed outside the gate at Dennis where Sylvester stood and watched Steenrod unload the tank trailer.

Steenrod argues that these comments are admissible as non-hearsay or as an admission by a party opponent. He asserts that these comments were being used to show the knowledge of Klipsch and not to prove the matter asserted. Further, he contends that these comments are non-hearsay because the declarant, Sylvester, was available for cross-examination. Additionally, Steenrod argues that as a custodian for the tank trailer, Sylvester's comments were made on behalf of Klipsch and thus, even if they are hearsay, constitute an admission by a party opponent.

Klipsch counters by arguing that these comments were not admissible as a party opponent admission, because Steenrod failed to establish that Sylvester had authority to speak on behalf of Klipsch or was acting within the scope of his employment in making the comments. Furthermore, Klipsch asserts that even if these comments were admissible as a party opponent admission, they are irrelevant to show any knowledge that Klipsch had concerning Steenrod's incompetence to unload the tank trailer.

At trial, Steenrod's attorney asked Sylvester twice whether he had made a comment to the strikers while he was standing at the gate that Steenrod did not know what he was doing, and that he was going to kill himself. Sylvester responded, "I don't recall" both times to this question. On cross-examination, Sylvester again testified that he did not recall telling any of the strikers that Steenrod was going to be hurt. Moreover, Klipsch's attorney introduced into evidence statements from Syl-

vester's deposition of August 25, 1982 in which he stated that he did not remember ever telling any of the strikers that Steenrod was going to hurt himself.

Subsequently, Steenrod's attorney called Haley as a witness. Haley admitted that he spoke to the truck driver. However, the trial court did not allow Haley to testify as to any of Sylvester's comments, subject to Klipsch's hearsay objection. Haley continued to testify as to other matters. At the close of his testimony, Steenrod's attorney made an offer of proof as to what Haley's inadmissible testimony would have contained.

■ As we consider this issue, we are mindful that the trial court's decision on the admissibility of evidence is to be accorded great weight and will not be disturbed absent an abuse of discretion. *Iota*, 731 S.W.2d at 412[7]. Furthermore, correct trial court decisions on the admission or exclusion of evidence will not be grounds for reversal because they are based on incorrect reasons. *Roach v. Consolidated Forwarding Co.*, 665 S.W.2d 675, 682[15] (Mo.App.1984). We will uphold the trial court's action if there is any recognized ground on which the trial judge could have rejected the evidence. *Missouri Farmers' Ass'n. v. Kempker*, 726 S.W.2d 723, 726[1] (Mo. banc 1987).

■ Our review of the record convinces us that, irrespective of the possible admissibility of the comments in question under an exception to the hearsay rule, these comments were not relevant to prove that Klipsch knew or should have known of Steenrod's incompetence. The record reflects that Sylvester's alleged comments occurred after Steenrod had received control of the tank trailer at the gate and had attempted to unload the tank trailer. Further, the record reflects that Sylvester's alleged comments were made in the time frame immediately preceeding Steenrod's injuries. If anything, Sylvester's alleged comments are probative of Steenrod's incompetency, but do not show that Klipsch knew or should have known of his incompetency.

Under the theory of negligent entrustment, the entrustor's knowledge of the entrustee's incompetence, negligence or recklessness must exist at the time of the entrustment. *Evans*, 555 S.W.2d at 326[1]; Restatement (Second) of Torts § 390 Comment b, illustrations 3–6 (1965). Clearly, the alleged comments came after Sylvester had the opportunity to observe Steenrod's attempts to unload the tank trailer. Steenrod's offer of proof indicates that these comments were being offered to show that Klipsch knew or should have known of Steenrod's incompetency. It is clear that on that basis, the evidence is not probative of Klipsch's knowledge or what it should have known. Point denied.

■ In his sixth point on appeal, Steenrod states that the trial court erred in failing to give Instruction A, a non-MAI instruction, which reads as follows:

First: Defendant Klipsch Hauling Co. Inc., placed the plaintiff, James Steenrod, in a position of danger; and

Second: Defendant either knew or should have known Plaintiff was in danger; and

Third: Defendant failed to warn Plaintiff of such danger; and

Fourth: Such failure to warn was negligent; and

Fifth: As a direct result of such failure to warn, Plaintiff was damaged.

Steenrod submitted this instruction to set forth his legal theory of negligent failure to warn of danger, which he included in Counts II and III of his Sixth Amended Petition.

Where there is no applicable MAI, the instruction shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts. Rule 70.02(e). A non-MAI instruction must conform to the theory of MAI. *Piva v. General American Life Ins. Co.*, 647 S.W.2d 866, 876[21, 22] (Mo.App.1983). Therefore, we test the instruction as to whether it follows the substantive law and can be readily understood. *Kirkwood Medical Supply Co. v. Ann Patterson Enterprise, Inc.*, 511 S.W.2d 433, 435[3–5] (Mo.App.1974).

Steenrod's argument is completely devoid of any legal authority for his theory of negligent failure to warn. Our research has led us to Restatement (Second) Torts § 392, which provides:

One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Our Supreme Court, in *Fletcher v. Kemp*, 327 S.W.2d 178, 185[12, 13] (Mo.1959), has cited § 392 with approval for causes of action sounding in negligence. Thus, we find that § 392 provides a cognizable legal theory of recovery for negligent failure to warn.

The elements of negligent failure to warn under § 392 are: (1) a supplier, who supplies; (2) a chattel for suppliers' business purposes; and (3) the chattel is used in the manner for which and by persons for whose use it was supplied; and (4) the chattel was defective, the defect was discoverable on inspection, and the defect caused the accident; and (5) the supplier failed to inspect and failed to inform of the defect. *Wright v. Newman*, 735 F.2d 1073, 1080[8] (1984), *cited with approval in Ridenhour v. Colson Caster Corp.*, 687 S.W.2d 938, 945[2, 3] (Mo.App.1985). Our examination of Instruction A discloses that it fails to set forth the necessary elements required by § 392. Instruction A fails to require a finding that: (1) Klipsch was a supplier who supplied the chattel, tank trailer, for its business purposes; (2) the chattel, tank trailer, was used in the manner for which and by persons for whose use it was supplied; and (3) the chattel,

tank trailer, was defective and was dangerous when put to a reasonably expected use. Accordingly, we conclude that Instruction A does not comply with the substantive law and Rule 70.02(e). Thus, the trial court did not err in refusing to submit Instruction A.

In his seventh point on appeal, Steenrod asserts that reversible error occurred when the motion court, on May 4, 1988, sustained a motion to strike his expert witness, Dr. Ben Bayse. Steenrod contends that this precluded him from presenting both Dr. Bayse's testimony and deposition of April 11, 1988 at trial. This prejudiced him, Steenrod claims, because he "could have made a much stronger case based upon the expert opinion."

We shall not review this allegation because Steenrod did not properly preserve this point for review. He did not call Dr. Bayse as a witness, attempt to introduce Dr. Bayse's deposition into evidence, or make an offer of proof as to either. Where the trial court had no opportunity to make a ruling, plaintiff cannot complain about it. *Ferrara v. Wells*, 728 S.W.2d 718, 719[4] (Mo.App.1987). Point denied.

In his eighth point on appeal, Steenrod complains of the motion court's action in issuing a protective order on June 27, 1988 which forestalled further discovery, and allowed Klipsch to ignore and not respond to any discovery request filed on or after May 27, 1988. He states that this order precluded him from obtaining information "essential to litigating this case." Steenrod cites no authority for this point and does not present an argument in his brief but refers to the legal file and states, "See Writ of Prohibition for further facts and argument." In searching the legal file, we have found a petition for a writ of prohibition on pages 341–365 which was not listed in the index. Apparently it was included as part of a motion for a new trial which is indicated in the index at page 302. Further examination revealed, in the supplemental legal file, on page 6, a denial of the petition. This alleged cite of authority does not comply with Rule 84.04(d). Furthermore, if we included the writ of prohibition and its denial as the argument

and citation of authority in Steenrod's brief, his brief of ninety-seven pages plus exhibits, would violate Rule 84.04(i). Therefore, we deem this point abandoned.

▆▆ In his ninth point on appeal, Steenrod alleges error by the trial court in allowing Klipsch to read an excerpt from Steenrod's deposition without requiring Klipsch to read a nearby statement. Moreover, Steenrod claims that the trial court prevented Steenrod's attorney from questioning Steenrod about his statements. He argues that this allowed the jury to give greater weight to Steenrod's deposition statements.

Steenrod's allegation of error apparently stems from the final question that Klipsch's attorney asked Steenrod on cross-examination. Referring to Steenrod's deposition, Klipsch's attorney stated, "Do you recall your response, 'after I hooked their hose up, I went up on top, because when you start pumping out, it creates a vacuum. You have to open the dome lid to let the air in. I went up there and opened the lid, and that's when it blew up?'" No response to this question appears in the record. Steenrod's attorney did not object to the question. Further, Steenrod's attorney was able to conduct redirect examination of Steenrod immediately following this question. After questioning Steenrod on other matters, Steenrod's attorney began to question Steenrod about his deposition. Klipsch's attorney objected on the grounds that he was trying to rehabilitate his own witness. In response, Steenrod's attorney said that he wanted to use the deposition to refresh Steenrod's memory. The court inquired whether Steenrod's attorney wanted Steenrod to change his testimony. Steenrod's attorney replied that he wanted to clarify what he was saying at the deposition. Responding, the trial court stated:

Well, I can't tell what the questions are going to be until you ask them. And I can't rule on his objections to them in advance.

Why don't we recess for the evening. We'll get going again in the morning and see where we go. All right?

But I think what you're indicating you want to do wouldn't be within the realm of what I think would be.

The following morning, Steenrod's attorney did not ask him any further questions about his deposition statements.

Subsequently, in Klipsch's case in chief, Klipsch read Steenrod's statement into evidence as an admission against interest. Steenrod's attorney objected on the grounds that it was repetitious and the trial court overruled the objection. Then, Steenrod's attorney recalled Steenrod on rebuttal. Thereafter, the following exchange between Steenrod and his attorney occurred:

Q. Regarding the portion in your deposition that Mr. Morin has just read regarding your going up on top of the tank trailer when you were converting over to using the pump method from the pressure method, later in your testimony that day you explained what you meant when you said you started to open up the dome lid. Would you tell what you meant by that comment, as fully explained by your deposition?

[Klipsch's attorney]: Objection, Your Honor. That's repetitious. It's been gone into on direct examination.

THE COURT: Well, I'll overrule the objection as to the repetitious ground. However, I would sustain it as to the form of the question.

[Klipsch's attorney]: Thank you, Your Honor.

Q. In your deposition, regarding that comment in your deposition, Mr. Steenrod, would you explain to us what you meant by that comment that Mr. Morin just read to us?

[Klipsch's attorney]: Objection, Your Honor. The deposition speaks for itself, and what he meant regarding the state of mind of seven years ago, I don't think that's relevant.

[Steenrod's attorney]: It's correct, the entire deposition speaks for itself, and not just one portion of it, Your Honor.

THE COURT: Overruled.

A. What was meant by the statement was that the next process would be to

open up the dome lid and to let air in, and that's what I was attempting to do. I climbed up there and reached over to open it up.

Q. Did you ever get to open up the dome lid?

A. No, I did not.

Q. What did you do?

A. I was reaching for one of the dogs when the lid blew.

The decision whether to admit deposed testimony is one that is largely within the discretion of the trial court. *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 197[16] (Mo.App.1984). On review, we accord the trial court broad discretion in ruling on the use of depositions. *Burrous v. American Airlines, Inc.*, 639 S.W.2d 263, 267[8–10] (Mo.App.1982). Once one party reads a portion of a deposition, it is a general rule that the opposing party may read some or all of the remaining deposition in explanation. *Id.*

From our review of the record, we fail to see how Steenrod was prejudiced. After Klipsch questioned Steenrod about his deposition statements, Steenrod's attorney had two opportunities to garner from Steenrod an explanation of these statements. Moreover, Steenrod's attorney fully questioned Steenrod about what he meant by the statement Klipsch had read earlier. Thus, Steenrod's ninth point on appeal is without merit.

In his tenth point on appeal, Steenrod alleges that the trial court erred in permitting Klipsch to read a statement from Steenrod's First Amended Petition. At trial, Klipsch read Count III, Paragraph 11 of Steenrod's First Amended Petition which contained the statement, "Klipsch informed Dennis to call if there were any problems with unloading, and that they would send help if needed." Steenrod asserts that this statement was included in his First Amended Petition due to Klipsch's false representation that such a statement had been made. Further, Steenrod states that he abandoned the statement after investigation indicated that the statement had not been made.

An abandoned pleading is admissible against the party who originally filed it when it contains statements of facts which are against the interest of the party. *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 642[14–16] (Mo. banc 1987). We note that Steenrod admits in his reply brief that the statement at issue was from an abandoned pleading and thus, was properly read into the record by Klipsch as an admission against interest. However, Steenrod argues, both at trial and on appeal, that it was unfair to allow this statement to be read into the record when it was based on the intentional misrepresentation of Klipsch. Steenrod does not allege any facts in support of his allegation other than the assertion that Klipsch's intentional misrepresentation resulted in the inclusion of the statement in the pleadings. Furthermore, Steenrod does not provide us with any pertinent legal authority to support his argument. The legal authority cited is not relevant to the point. In any event, the point is not meritorious.

In his eleventh point on appeal, Steenrod contends that the trial court erred in reducing his time for closing argument from sixty to thirty-five minutes. He alleges that the trial court, on the day before closing argument, advised Steenrod's attorney that he would allow one hour for closing argument. He asserts that this amount of time was insufficient for him to present closing argument "due to the complexities of the case and the amount of information needed to be discussed."

The trial court has discretion in determining the length of time for closing argument. *Henderson v. Jackson*, 526 S.W.2d 73, 74[1] (Mo.App.1975). On appeal, we will not interfere unless counsel has been denied a reasonable length of time to present its case due to the trial court's abuse of discretion. *Id.*

Here, Steenrod's attorney does not inform us of what he was not allowed to argue and its significance. Therefore, we conclude that it was not an abuse of the trial court's discretion to limit Steenrod's closing argument to thirty-five minutes and ten minutes for rebuttal, for a total of

forty-five minutes. *See Lineberry v. Shull*, 695 S.W.2d 132, 137[19, 20] (Mo.App. 1985).

In his twelfth point on appeal, Steenrod argues that the verdict was against the weight of the evidence. As an appellate court, we do not weigh the evidence. *Jackson v. Premier Service Corp.*, 761 S.W.2d 648, 650[4, 5] (Mo.App.1988). The trial court may, in considering a motion for new trial, where the ground is properly asserted, consider whether the verdict is against the weight of the evidence. *Id.* Therefore, this point is without merit.

In our review of Steenrod's initial twelve points on appeal, we have found his first claim of error to be meritorious. Therefore, in accordance with the principle set forth in *Grippe*, we shall consider the submissibility of Steenrod's case, because it is "a question inherent in deciding whether the error found by the appellate court merits reversal or remand for new trial." 696 S.W.2d at 799[3].

In determining whether Steenrod has made a submissible case, we view the evidence in the light most favorable to him. *Lauderdale v. Siem*, 725 S.W.2d 897, 899[1] (Mo.App.1987). He is given the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Loomstein v. Medicare Pharmacies, Inc.*, 750 S.W.2d 106, 112[5, 6] (Mo.App.1988). However, we do not supply missing evidence or give Steenrod the benefit of unreasonable, speculative, or forced inferences. *Id.* Furthermore, Steenrod has the burden of proving by substantial evidence the facts essential to recovery. *Lauderdale*, 725 S.W.2d at 899[1].

As we previously stated, to make a submissible case invoking the doctrine of negligent entrustment, Steenrod must establish by substantial evidence that: (1) the entrustor is incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) that the entrustor knew or should have known of the entrustee's incompetence; (3) there was an entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the

entrustee as a proximate cause of the harm to plaintiff. *Evans*, 555 S.W.2d at 326[1].

The evidence indicates undisputedly that Klipsch entrusted the tank trailer to Dennis, through Steenrod, to be unloaded. Furthermore, the evidence indicates that Steenrod was incompetent by reason of inexperience or otherwise to properly unload a tank trailer. Steenrod's inability to locate the proper fittings or gauges coupled with his continued running of the compressor and his subsequent opening up of the dome lid support a reasonable inference that he was inexperienced in the method of unloading a tank trailer.

However, the record is devoid of any evidence that Klipsch knew or should have known of this incompetence at the time of the entrustment. We will not reverse a judgment for error unless some injury has been worked upon the complainant. *Reed v. Spencer*, 758 S.W.2d 736, 741[7] (Mo. App.1988). Only where prejudice is demonstrated will the judgment be reversed. *Id.* Therefore, Steenrod has failed to make a submissible case on his claim of negligent entrustment. Having thus found that Steenrod failed to make a submissible case, we conclude that the trial court's error in the giving of Instruction No. 7 did not result in injury to Steenrod. Thus, Steenrod was not prejudiced by the trial court's action so as to justify reversal and remand for new trial. Furthermore, we need not consider Steenrod's thirteenth point on appeal concerning cumulative prejudicial error.

Finally, Steenrod's motion to file depositions of Dr. Ben Bayse, James Steenrod, Gary Haley, and Delvin Sylvester are denied. As we earlier concluded, the deposition of Dr. Ben Bayse was never brought to the attention of the trial court, and therefore it cannot be brought before us for consideration. Furthermore, those portions of the depositions of James Steenrod, Gary Haley, and Delvin Sylvester that are relevant to the issue in this case are properly before us in the record on appeal. For the purposes of our review, we need not consider the entire depositions as they were not introduced at trial and are not needed

to resolve the points on appeal. Additionally, Klipsch's motion to strike new allegations in appellant's reply brief not presented in appellant's original brief is denied.

Judgment affirmed.

DOWD, P.J., and JOSEPH J. SIMEONE, Senior Judge, concur.