**Tom MYERS, Plaintiff/Appellant,**

v.

**Gerald RIES, Defendant/Respondent.**

No. ED 74884.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 16, 1999.

David M. Zevan, Tolin & Zevan, L.L.C., St. Louis, for Appellant.

Harold L. Whitfield, Kirkwood, for Respondent.

PAUL J. SIMON, Judge.

Tom Myers, plaintiff, appeals from a judgment entered on a jury verdict apportioning fifty percent fault to plaintiff and fifty percent to defendant, Gerald Ries, in an action for negligence arising out of an automobile-motorcycle collision.

On appeal, plaintiff contends the trial court erred in allowing the defendant's deposition testimony to be read to the jury in violation of Rule 57.07, during defendant's case-in-chief, and ruling against plaintiff's motion for new trial regarding the percentage of fault and/or additur because the verdict was against the manifest weight of the evidence and resulted from bias, passion, or prejudice. We affirm.

The record, viewed in the light most favorable to the verdict, reveals that on September 25, 1990, plaintiff was operating a motorcycle northbound on Gustine Avenue at the intersection of Alberta when his motorcycle and defendant's automobile collided. Gustine Avenue is a two-way street, divided by a wide, grass median, with one lane on either side. At the intersection of Gustine and Alberta, there is a paved break in the median. There are no traffic controls at the intersection.

As a result of the accident, plaintiff suffered a fractured collarbone, concussive head injury, bleeding into the urine, dislocated thumb, ruptured left eardrum and inner ear concussion, most of which had healed by the time of trial. However, as a result of the injury to his ear, plaintiff suffered permanent hearing loss and severe headaches, vertigo, loss of equilibrium, impaired ability to work, past and future lost wages, past and future medical expenses and pain and suffering.

At trial in April 1998, plaintiff testified that as he approached the intersection, northbound on Gustine, he saw defendant's automobile, southbound, on the other side of the median. When he was fifty feet away, he noticed the automobile stop near the intersection of Alberta. He then saw the automobile turn onto the opening in the median at Alberta and stop before entering the northbound lane of Gustine. Plaintiff testified he was thirty feet from the intersection at this time. As plaintiff neared the intersection, he stated he was traveling between 20 to 25 miles per hour. He decelerated when he first saw defendant's automobile because he was uncertain as to what defendant would do. However, when he noticed that defendant's automobile was stopped at the intersection, he accelerated, thinking that defendant would remain stopped. As plaintiff reached the intersection, defendant began making a left turn onto Gustine. Plaintiff saw defendant's automobile coming into his lane on Gustine, so he hit his brakes and veered to the right, but was unable to avoid the collision. Plaintiff

was knocked unconscious and testified that he had no recollection of the collision.

The record indicates that defendant was not present at trial and, pursuant to Rule 57.07, plaintiff read to the jury the following selected portions of plaintiff's counsel's examination of defendant from defendant's deposition:

Q: What is your address now?

A: My address is 4249 Michigan.

* * *

Q: Okay, do you remember this particular accident?

A: No, Sir.

* * *

Q: As far as – all right, are you saying you don't remember this accident at all, don't remember anything about it?

A: Practically nothing.

* * *

Q: Okay, why was the police officer taking something down? Why were you talking to him?

A: Because when I heard a thump, I was already on Alberta.

* * *

Q: Do you think that the motorcycle driver was going too fast? Is that what you're telling me?

A: I can't tell you that.

* * *

Q: All right. Do you know whether or not before you made this left turn onto Alberta from Gustine, do you know whether or not you came to a complete stop?

A: I always do so I can look.

Q: All right.

A: Then I go right away.

Q: All right.

A: The faster I get away from there the better off I am.

* * *

Q: Do you remember telling the police officer that you were trying to make a left turn on Alberta when you acciden-

tally struck the motorcycle? Do you remember telling the police officer that?

A: I never told the police officer that.

* * *

Q: All right. As far as you know – this is regarding an optometrist.

Q: As far as you know, he says you are fine and you don't need any glasses?

A: No, I need glasses to read.

After plaintiff finished reading portions of the deposition, the trial court offered defendant's counsel the opportunity to read portions of the deposition for "completeness purposes only," but he declined to do so at that time.

Officer Sharp of the St. Louis Police Department, who responded to the accident, testified that he arrived at the scene approximately seven minutes after the accident. He interviewed plaintiff and defendant and recorded their statements in his report. Officer Sharp testified that his report stated that defendant said "he was driving south on Gustine, attempting to make a left turn onto Alberta. While making his left turn, he accidentally struck [plaintiff's motorcycle]. [Defendant] stated that he was at a complete stop before making his left turn and did not see any traffic coming." Officer Sharp further testified that his report indicated plaintiff said "all he could remember was that he was driving north on Gustine when, out of nowhere, he was struck."

Plaintiff also presented the deposition testimony of Walter Lemann, M.D. and the videotaped deposition testimony of James E. Benecke, M.D. Both Dr. Lemann and Dr. Benecke testified that as a result of the accident, plaintiff sustained a damage to the left ear, which resulted in permanent hearing loss, loss of equilibrium, and vertigo. Further, they agreed that further surgery to correct the loss of equilibrium is an option for plaintiff.

Regarding his injuries, plaintiff testified that he suffered impaired ability to work, past and future medical expenses and pain and suffering. The record reveals that the

uncontroverted testimony was that plaintiff suffered present medical damages amounting to $6,075.40, future medical damages estimated to be between $12,000.00 and $15,000.00, and lost wages of $11,559.62 for a total of $29,625.02 to $32,635.02.

During defendant's case, counsel was allowed, over plaintiff's objection, to read to the jury for completeness purposes the following selected portion of plaintiff's counsel's examination of defendant from defendant's deposition:

Q: Would you state your name for the record, sir?

A: Gerald, G–E–R–A–L–D – and I use the initial J – my last name is Ries, R–I–E–S.

Q: Mr. Ries, do you still live on Hydraulic Avenue in the City of Saint Louis?

A: No, sir.

Q: What address is your address now?

A: My address is 4249 Michigan.

Q: Is that a house or an apartment, sir?

A: That's an apartment.

Q: Okay. Is there an apartment number there?

A: Yes.

Q: Do you know what that is?

A: It's apartment 401.

Q: Four-oh-one, okay. How long have you lived there on Michigan?

A: I live on Michigan approximately about seven years.

Q: Okay. Are you a married man?

A: I've been married for over forty years. My wife just passed away last September.

Q: Sorry to hear that, sir. You live by yourself at that address then?

A: Yes, sir.

Q: Okay. How old of a gentleman are you?

A: I'm seventy-four.

\* \* \*

Q: Do you remember telling the police officers that you were trying to make a left turn on Alberta, and when you did, you accidentally struck the motorcycle? Do you remember telling the police officer that?

A: I never told the police officer that.

Defendant presented no other evidence.

During closing arguments, plaintiff requested that the jury return a verdict finding defendant one hundred percent at fault and awarding damages to plaintiff in the amount of $350,000. That same day, the jury returned a verdict finding the amount of plaintiff's damages to be $40,000.00 and assessing fifty-percent fault to plaintiff and fifty-percent fault to defendant. The trial court then entered a judgment in accordance with the jury's verdict, awarding plaintiff $20,000.00. Plaintiffs filed a motion for new trial alleging:

1. The jury verdict rendered in this case was an inconsistent verdict in that said jury assessed plaintiff Tom Myers to be 50 percent at fault for the accident, which is the subject of this lawsuit.

2. The judge erred in admitting evidence from defendant Gerald James Ries' deposition into evidence, and such admission was a prejudicial error.

3. The jury verdict was inconsistent in that plaintiff's medical bills and damages produced at trial without objection well exceeded the amount of the jury verdict.

The record on appeal includes the verdict form signed by the jurors, but does not include the verdict directing instructions, nor defendant's answer to plaintiff's petition.

In his sole point on appeal, plaintiff contends the trial court erred in allowing the defendant's deposition testimony to be read to the jury during defendant's case in chief in violation of Rule 57.07 and ruling against plaintiff's motion for new trial regarding the percentage of fault and/or ad-

ditur because the verdict was against the manifest weight of the evidence and resulted from bias, passion, or prejudice.

Plaintiff's point fails to comply with Rule 84.04 in that it does not state specifically why the trial court erred in allowing defendant's counsel to read from defendant's deposition or how plaintiff was prejudiced. Further, it contains an allegation that the trial court erred in ruling on a motion for new trial and/or additur, which should have been enumerated and argued as a separate point. However, in the interest of resolving the case on the merits, we address plaintiff's point.

Plaintiff's point addresses Rule 57.07 as amended June 1, 1993, which is the rule that was in effect during trial, and our review is limited to that version of the rule. However, Rule 57.07 was amended May 15, 1998, effective January 1, 1999 and substantial changes were made.

■ The decision whether to admit deposition testimony is largely within the discretion of the trial court. *Steenrod v. Klipsch Hauling Co., Inc.*, 789 S.W.2d 158, 170 (Mo.App. E.D.1990). On review, we accord the trial court broad discretion in ruling on the use of depositions. *Id.*

Plaintiff's point fails to state why the trial court erred in its ruling as to defendant's deposition. We glean from plaintiff's brief and the record that plaintiff, relying on this court's holding in *Nachtweih v. Maravilla*, 861 S.W.2d 164 (Mo. App. E.D.1993), contends that the trial court abused its discretion in allowing defendant's counsel to read portions of defendant's own deposition during his case, claiming that Rule 57.07(a)(2) limits use of a party's deposition by an adverse party and that defendant's counsel waived his right to read from defendant's deposition for completeness purposes. Further, plaintiff contends that even if the trial court did not err in allowing defendant's counsel to read from defendant's deposition during his case, it abused its discre-

tion by allowing defendant's counsel to read the portions that he selected.

Plaintiff's reliance on *Nachtweih* is misplaced. In *Nachtweih*, defendant's counsel was permitted, over plaintiff's objection, to read excerpts from the deposition of a former defendant physician without first laying the foundation for admission of the deposition as required by Rule 57.07. While *Nachtweih* holds that a party must prove the unavailability of a witness prior to admission of his/her deposition under Rule 57.07(a)(3) or that the deposition is that of an adverse party pursuant to Rule 57.07(a)(2), that is not the issue in this case.

■ Here, plaintiff read portions of defendant's deposition pursuant to Rule 57.07(a)(2) because the defendant was an adverse party and the question is whether the trial court abused its discretion in allowing defendant's counsel to read portions of defendant's deposition for completeness purposes during his case. The general rule is that once a party reads a portion of a deposition, under Rule 57.07, the opposing party may read some or all of the remaining deposition in explanation. *Steenrod*, 789 S.W.2d at 170. However, plaintiff argues that the reading of the deposition for completeness purposes should have been done immediately after plaintiff read from defendant's deposition and that it was prejudicial error to allow defendant's counsel to read from defendant's deposition during his case.

The parties have not directed us to nor have we found any Missouri cases on point. However, we note that Rule 57.07 essentially tracks Rule 32 of the Federal Rules of Civil Procedure (FRCP) and we look to rulings on the Federal Rule for guidance. *Carmody v. St. Anthony's Medical Center*, 829 S.W.2d 654, 657 (Mo.App. E.D.1992). In *Haddigan v. Harkins*, 441 F.2d 844, (3ʳᵈ Cir.1970), a wrongful death and survival case, after allowing Haddigan's counsel to read into the record seventeen separate portions of Harkin's deposition, counsel for Harkin argued that he

was prejudiced on the liability portion of the case by the trial court's failure to require Haddigan's counsel to read all relevant part's of Harkin's deposition in Haddigan's case. The Third Circuit Court of Appeals found that, pursuant to 32 FRCP, the trial judge exercised appropriate discretion in allowing plaintiff's case to proceed and allowing the reading of the desired parts of deposition later in the trial. *Id.*

Here, the record indicates that defendant was not present at trial and plaintiff was allowed to read portions of defendant's deposition into evidence during his case, pursuant to Rule 57.07. After plaintiff's counsel finished, the trial court provided defendant's counsel the opportunity to read from the deposition for "completeness purposes only." He declined to do so at that time, but during his case in chief, sought to read from the deposition. Plaintiff's counsel objected, in part claiming that defendant's counsel had waived the right. After considering the arguments and reviewing the relevant portions of defendant's deposition, the trial court overruled plaintiff's objection and allowed defendant's counsel to read selected portions for completeness purposes. Under these circumstances, the trial court did not abuse its discretion in allowing the case to proceed and permitting defendant's counsel to read from defendant's deposition during his case in chief in that the ruling was not clearly against the logic of the circumstances then before the trial court and was not so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration. *House v. Missouri Pacific Railroad Co.*, 927 S.W.2d 538, 540 (Mo. App. E.D.1996).

■ We next address plaintiff's argument that the trial court committed prejudicial error in allowing defendant's counsel to read into evidence the following portion of defendant's deposition for completeness purposes:

Q: Do you remember telling the police officers that you were trying to make a left turn on Alberta, and when you did, you accidentally struck the motorcycle? Do you remember telling the police officer that?

A: I never told the police officer that.

Here, the record clearly indicates that this excerpt is the portion of the deposition which plaintiff read into evidence during his case in chief. This portion is cumulative and not prejudicial.

■ Plaintiff also complains that the trial court committed prejudicial error in allowing defendant's counsel to read to the jury for completeness purposes the following selected portion of plaintiff's counsel's examination of defendant from defendant's deposition because the statements adversely affected the issue of damages, implying inability to pay, and are a call for sympathy:

Q: Would you state your name for the record, sir?

A: Gerald, G–E–R–A–L–D – and I use the initial J – my last name is Ries, R–I–E–S.

Q: Mr. Ries, do you still live on Hydraulic Avenue in the City of Saint Louis?

A: No, sir.

Q: What address is your address now?

A: My address is 4249 Michigan.

Q: Is that a house or an apartment, sir?

A: That's an apartment.

Q: Okay. Is there an apartment number there?

A: Yes.

Q: Do you know what that is?

A: It's apartment 401.

Q: Four-oh-one, okay. How long have you lived there on Michigan?

A: I live on Michigan approximately about seven years.

Q: Okay. Are you a married man?

A: I've been married for over forty years. My wife just passed away last September.

Q: Sorry to that, sir. You live by yourself at that address then?

A: Yes, sir.

Q: Okay. How old of a gentleman are you?

A: I'm seventy-four

We disagree. Plaintiff's counsel admitted in oral argument that the "insurance question" was asked during voire dire and the remainder of the portion of the deposition is substantially the same testimony which plaintiff's counsel read or is explanatory of such testimony. Therefore, the trial court did not err in allowing defendant's counsel to read these portions of defendant's deposition.

■ Next, we address plaintiff's argument that the trial court erred in denying plaintiff's motion for new trial regarding the percentage of fault and/or additur because the verdict was against the manifest weight of the evidence and resulted from bias, passion, or prejudice. We note that plaintiff's point seems to challenge the sufficiency of the evidence on both liability and damages. Since the record does not include defendant's answer nor the verdict directing instructions we will not assume the grounds on which the case was submitted to the jury. Therefore, we will not review plaintiff's point regarding the percentage of fault.

■ Further, plaintiff argues that the evidence supports a verdict exceeding the $20,000.00 in damages he was awarded and that the trial court should have granted his motion for new trial and or additur. A new trial is only available upon showing that trial error indicated prejudice in the jury, and the amount of verdict by itself is not enough to establish that verdict was result of bias, passion and prejudice. *Bodimer v. Ryan's Family Steakhouses*, 978 S.W.2d 4, 9 (Mo.App. E.D.1998). Plaintiff has not substantiated any error. The record reveals that the uncontroverted evidence shows plaintiff's damages to be $6,075.40 present medical damages, between $12,000.00 and $15,000.00 future medical damages, and lost wages of $11,-559.62 for a total of $29,605.02 to $32,-635.02. Further, the record indicates that the jury found plaintiff's damages to be $40,000.00, but that he was awarded only $20,000 because the jury also found plaintiff to be fifty-percent at fault. Clearly, the jury's finding as to plaintiff's damages was supported by substantial evidence. Point denied.

Judgment affirmed.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.