Billy Joe **EICKELMAN**,
**Plaintiff-Appellant,**

v.

**ILLINOIS CENTRAL GULF RAILROAD COMPANY,**
**Defendant-Respondent.**

No. 48565.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 20, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 19, 1986.

Application to Transfer Denied
Sept. 16, 1986.

Douglas Patrick Dowd, St. Louis, for plaintiff-appellant.

Frank N. Gundlach, St. Louis, for defendant-respondent.

KELLY, Judge.

This is an appeal by plaintiff, Billy Joe Eickelman, from a jury verdict in favor of the defendant, Illinois Central Gulf Railroad Company, in a personal injury action filed against the railroad pursuant to the Federal Employer's Liability Act, 45 U.S.C. Section 51 et seq.

Plaintiff contends the trial court erred in: (1) denying plaintiff's motion for a directed verdict and a Judgment Notwithstanding the Verdict; (2) submitting the issue of contributory negligence to the jury; (3) failing to permit plaintiff's physician to detail plaintiff's medical history; (4) sustaining defendant's objection to plaintiff's closing argument regarding the Federal Employer's Liability Act; (5) overruling plaintiff's objection to defendant's reference to the issue of Burden of Proof; (6) submitting defendant's contributory negligence instruction based on M.A.I. 32.07; and (7) denying plaintiff's motion for new trial due to the wording of Instruction No. 9.

We affirm the judgment of the trial court.

Plaintiff began working for defendant in 1942. From time to time his position with the railroad changed, and eventually he became an engineer. This was his job with the railroad when the incident in question occurred. On July 15, 1981, plaintiff, 54 years old at the time of the accident, performed a regular night's work of switching railcars by moving the cars to a raised area known as "the hump." He testified that it rained hard that night between 6:00 and 8:00 p.m., followed by a drizzle which continued until he got off work at approximately 10:20 p.m. At the end of his shift, he stopped his engine on the top of "the hump." He was the last one off the engine.

Plaintiff testified that he left the hump at approximately 10:20 p.m., by way of a wooden staircase which was built by his employer about one to one and a half years prior to his injury. He also testified that he had used the stairs in question approximately once a month prior to his accident, and did not recall having any problems with them. The staircase consists of ten wooden steps leading down to a wooden platform, and then four more wooden steps which lead down to the ground.

As plaintiff descended the steps to the platform, his left foot slipped. Plaintiff also testified that prior to the slip he "probably didn't" use the handrail. At the time of the accident he injured his left knee and his calf muscle, but was nevertheless able to get down the last 6 or 7 steps by using the handrail.

Plaintiff testified he could see the platform, although there was some shadowing. After he had slipped, he looked to see what happened and saw a light covering of mud with small gravel.

Plaintiff was carrying a satchel in his left hand at the time he descended the stairs. On direct examination, plaintiff stated that the satchel contained two empty coffee bottles and his time book, but he did not think he had a flashlight. On cross-examination, however, plaintiff acknowledged having previously testified in a deposition that the satchel did contain a flashlight.

After the accident, plaintiff completed a report for the railroad indicating that his only injury was to his left knee and calf muscle. Plaintiff went to the hospital later that evening and had his left knee x-rayed and wrapped with bandages. He was on crutches after the accident, and went back to work approximately three weeks later.

Approximately eight months after the accident, plaintiff sought medical treatment for problems with his shoulder and neck. Plaintiff's evidence was that in May of 1983 he went to see a neurologist.

Defendant contended that plaintiff's neck, hernia and neurological problems were not the result of his accident, and that his complaints were attributable to pre-existing conditions.

The case was tried before a jury. At the close of all the evidence, plaintiff filed a motion for directed verdict. The trial court overruled his motion. After verdict for the defendant, plaintiff filed a motion for judgment notwithstanding the verdict in accordance with his motion for directed verdict, and in the alternative for a new trial. All such motions were overruled. Plaintiff asserts on appeal that the court erred in overruling each of said motions.

We deal first with plaintiff's argument that the trial court erred in failing to grant plaintiff's motion for a directed verdict and in failing to enter judgment for plaintiff. "A verdict may be directed for a plaintiff only in those rare cases where there are no genuine fact issues which should be submitted to the jury." *Parker v. Pine,* 617 S.W.2d 536, 541[8] (Mo.App.1981), citing *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 88 (Mo.App.1976).

■ A directed verdict is seldom proper where proof is dependent upon oral testimony. *Moore v. Smith,* 657 S.W.2d 664, 667[5] (Mo.App.1983); *Parker v. Pine,* 617 S.W.2d 536, 541 (Mo.App.1981). In the instant case, plaintiff's case rests almost entirely upon his own oral testimony. There was no other evidence to show the condition of the staircase in question except the photographs of the staircase which were

taken two years after the accident. Plaintiff's testimony was impeached and contradicted in several respects. Plaintiff's direct testimony and his testimony in his deposition differ as to whether he had a flashlight with him on the night of the accident. This point is crucial to determine if defendant failed to furnish plaintiff with a reasonably safe place to work. If the lighting on the staircase was not sufficient, one would assume the plaintiff would have used his flashlight to descend the stairs.

Additionally, plaintiff testified that he didn't grasp the handrail prior to his slip to avoid the possibility of a splinter. However, he also testified that immediately after he slipped, he did grab the handrail to enable him to get down the stairs. This point is also crucial because the jury may well have concluded that had the plaintiff used the handrail prior to his slip, plaintiff may not have been injured.

In the case at bar, there are genuine fact issues which should be submitted to the jury. "Plaintiff is not entitled to a directed verdict regardless of whether or not such oral evidence is controverted, because the credibility of witnesses and the weight to be accorded their testimony are for the jury and plaintiff must shoulder the risk of nonpersuasion." (footnote omitted) *M.F.A. Cooperative Ass'n. of Manfield v. Murray,* 365 S.W.2d 279, 287 (Mo.App. 1963). We hold that the trial court's refusal to direct a verdict on the issue of defendant's negligence was not error. For the above reasons, we also hold that the trial court's failure to grant plaintiff's motion for judgment notwithstanding the verdict was not error.

■ In his second point, plaintiff contends that the trial court erred in refusing to direct a verdict on the issue of plaintiff's contributory negligence. This court has previously held that a defendant is entitled to have the issue of contributory negligence submitted to the jury if the pleadings and evidence support it. *Brazell v. St. Louis Southwestern Ry. Co.,* 632 S.W.2d 277, 281[1] (Mo.App.1982). In *Han-*

*nah v. Mallinckrodt, Inc.,* 633 S.W.2d 723, 726[6] (Mo. banc 1982), the court held that:

> The general rule is that even where there is evidence of knowledge on the part of the employee of the danger of his place of work, or of the machinery with which he is provided, the question whether his acts and conduct in the light of such knowledge constitute contributory negligence is the question of fact for the jury, unless the evidence is such that all reasonable men would conclude that he was guilty of negligence which contributed to the casualty. *Id.* at 726.

In the instant case, considering the evidence in the light most favorable to the defendant, we cannot find that reasonable minds could only conclude that defendant failed to provide a reasonably safe stairway. Plaintiff's own testimony established that he probably didn't hold onto the handrail provided for his safety. The jury could have reasonably found that the plaintiff did not use reasonable care for his own safety if he was aware that it had rained and the stairs would be slippery.

Plaintiff's witness, Mr. Bartanion, a member of the crew on plaintiff's engine, testified that he didn't slip or fall that night, and that the lighting on the stairs was adequate. It is apparent that the condition of the stairs was not so unsafe as to threaten immediate and almost certain injury, or Mr. Bartanion would not have successfully descended the steps moments before plaintiff's accident. Under the circumstances we have here, whether plaintiff was contributorily negligent was an issue for the jury. This point is denied.

Plaintiff next contends that the trial court erred in failing to permit plaintiff's physician, Dr. Schreiber, to detail plaintiff's history.

It should be noted at the outset that the trial court is vested with substantial discretion in controlling and ruling on the admissibility of evidence. *Bellistri v. City of St. Louis,* 671 S.W.2d 405, 406[1] (Mo.App. 1984). A thorough review of the record reveals that no abuse of that discretion

occurred and we rule this point against plaintiff.

■ Plaintiff argues that his medical history was admissible into evidence because it was reasonably pertinent to diagnosis and treatment. In support of his position, plaintiff cites *Breeding v. Dodson Trailer Repair,* 679 S.W.2d 281 (Mo. banc 1984). However, plaintiff's reliance on *Breeding* is misdirected. In *Breeding,* the medical record was prepared in the emergency room of a hospital, and contained plaintiff's personal knowledge of his own injuries resulting from his accident. The court's rationale was as follows:

> People generally realize that for a physician to bring his skill to bear he must have accurate information on the patient's condition from the patient himself. McCormick, Evidence 2d Ed. (Hornbook Series) Ch. 29, Sec. 292. It would logically follow that if the patient can be presumed truthful in that circumstance (as to his present complaints and symptoms), he can equally reasonably be presumed to be truthful concerning that portion of his past medical history necessary for the physician to correctly diagnose and treat his present condition.

> *Breeding v. Dodson Trailer Repair,* 670 S.W.2d 281 [2] (Mo. banc 1984); *citing Hughey v. Graham,* 604 S.W.2d 626, 630 (Mo.App.1980).

The trial court in *Breeding* admitted the plaintiff's remarks noted in the hospital record.

In this case, however, we have reviewed the medical history, and find the information was not obtained exclusively from the plaintiff. The report contains other doctors' diagnoses and interpretations of CAT scans done by other doctors. *Breeding* never suggested that a patient's statements about what other doctors have told him are admissible, nor did *Breeding* hold that a synopsis of medical reports or documents prepared by other doctors is admissible.

It is also important to note that plaintiff sought treatment from Dr. Schreiber nearly two years after the accident, in May of

1983. Here, plaintiff's counsel referred plaintiff to a physician, who ultimately referred plaintiff to Dr. Schreiber. The two doctors consulted and worked together in treating plaintiff.

■ It may be fairly inferred that when Dr. Schreiber's office developed plaintiff's medical history, it was aware of its potential use for litigation. The medical history contains numerous embellishments which are not reasonably necessary for treatment. When defendant objected to the admissibility of the medical history, the trial court sustained the objection. The trial court justified its ruling against plaintiff by indicating it had read the medical history, and it contained possible self-serving statements and called for conclusions. It records offered into evidence as business records, under the Uniform Business Records as Evidence Law, were made and kept solely for self-serving purpose of the party offering them in evidence, it would be the duty of the trial court to refuse to admit them. *Kitchen v. Wilson,* 335 S.W.2d 38, 44[5] (Mo.App.1960).

We also find the proposed evidence would have been cumulative. The depositions of all the doctors contained in the medical history were read into evidence. Plaintiff had testified to his past physical condition and the circumstances surrounding his injury. The emergency room record was admitted at trial. Accordingly, we find the proposed evidence would have been cumulative, and thus, the exclusion of this evidence was not error and there is no merit to this point.

Plaintiff next contends the trial court erred in sustaining defendant's objection to plaintiff's closing argument alluding to the purpose for which Congress enacted the Federal Employers' Liability Act. Plaintiff's counsel told the jury in closing argument that the action was brought under FELA. Defendant objected that plaintiff was arguing the law to the jury.

■ FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal. *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. ——, 105 S.Ct. 1347, 1348 [1], 84 L.Ed.2d 303 p. 306[2] (1985). "Admissibility of evidence and propriety of argument to the jury are procedural matters which in FELA actions are governed by the law of the forum." *Faulkenberry v. Kansas City Southern Ry. Co.,* 602 P.2d 203, 209 n. 19 (Okla.1979). Thus, the manner in which plaintiff's counsel may argue the law is a matter of procedure which is controlled by state law. "Determining prejudicial effect of final argument is a matter within discretion of the trial court, and trial court's judgment on that matter will not be disturbed unless there was abuse of discretion." *Hoovers Dairy, Inc. v. Mid-America Dairymen,* 700 S.W.2d 426, 434[15] (Mo. banc 1985). We find no such abuse of discretion.

■ Plaintiff's fifth contention is that the trial court erred in overruling plaintiff's objection to defendant's reference to plaintiff's burden of proof.

The disputed argument occurred as follows:

MR. GUNDLACH; (Defendant's counsel) Ladies and gentlemen, the court instructions tell you it's not the defendant's burden of proof in this whole case.

MR. CHAPMAN: (Plaintiff's counsel) Well, that's not true, Your Honor. The burden of proof—is on the defendant. He's—

THE COURT: Well, if that's an objection, I'll overrule it.

MR. GUNDLACH; It's the plaintiff's—

MR. CHAPMAN: It is an objection, so the record shows it, Your Honor.

THE COURT; Very well. Overruled.

MR. GUNDLACH: I'm speaking of the plaintiff's claim. It's the plaintiff's burden of proof to prove to you by this evidence, by the competent evidence, that there was an injury here and all these damages that have resulted. And I submit to you that it hasn't been done.

Plaintiff contends that defendant's statement on burden of proof could have been

misconstrued by the jury, because defendant had the burden of proof on the affirmative defense of contributory negligence.

The able and experienced trial judge, who was in a better position than us to gauge the impact of the comments, determined that defendant's statement, taken in context, was referring to plaintiff's burden of proving damages.

Furthermore, the jury was properly instructed on the burden of proof by M.A.I. 301, which was submitted by the plaintiff. This court has examined the issue and finds no abuse of discretion. We rule this point against plaintiff.

■ Plaintiff's sixth argument on appeal is that the trial court erred in submitting defendant's contributory negligence instruction based on M.A.I. 32.07. That instruction was as follows:

INSTRUCTION NO. 9

You must find plaintiff contributorily negligent if you believe:

First, either:

 a. plaintiff failed to keep a careful lookout for any mud or debris on the steps, or

 b. plaintiff failed to hold onto the handrails, and

Second, plaintiff in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of plaintiff directly contributed to cause his injury.

Our research indicates that the law on this question is well settled. In *Demko v. H & H Investment Co.*, 527 S.W.2d 382, 389[10] (Mo.App. banc 1975), the court held that before a party can be found contributorily negligent, there must be a finding that he acted or failed to act with knowledge and appreciation, actual or constructive, of the danger of injury resulting from his conduct.

In the instant case, plaintiff objects to Instruction No. 9 on the ground that there was no evidence that plaintiff appreciated the danger of the unknown hazard of slippery debris on the staircase. We disagree.

The following testimony by the plaintiff illustrates that he appreciated the slippery nature of mud, and therefore, the danger it may present. "If I would have seen it, I certainly wouldn't have put my heel down and slid on it. I'm too old to go skating." There was also evidence from which a jury could find that the lighting was sufficient, and had the plaintiff been keeping a careful lookout, he could have seen the mud prior to his accident, particularly with the knowledge that it had just rained for several hours.

Plaintiff testified as follows:

Q. Now, how was your vision as you went down in reference to those various steps?

A. My—Well, as far as the lighting was and my vision, I could see.

Q. Yes, sir.

A. I had no problem as far as seeing was concerned.

The jury could have concluded that it was possible for the plaintiff to have seen the mud prior to his accident, and by descending the steps with caution, he could have avoided his injury.

Plaintiff relies on *Davidson v. International Shoe Co.*, 427 S.W.2d 421 (Mo.1968). That case is not, in our opinion, controlling here. In *Davidson*, the plaintiff stepped onto a catwalk, which then tilted and caused plaintiff's fall. There was no evidence that even if the plaintiff had observed the steps carefully, he would have been aware of the danger of the step tilting.

In the instant case, the danger of slipping on mud or debris on wooden steps is obvious. Accordingly, on the facts of this case, we do not find any error in the court's instruction on contributory negligence. There was evidence from which the jury could reasonably conclude that plaintiff did not exercise due care and that the defendant was not at fault.

Plaintiff's final point relied on totally fails to comply with the requirement of Rule 84.04(d) by failing to state "wherein

and why" the rulings of the trial court are claimed to be erroneous. Nor does the argument in the brief shed much light upon the basis for the claim of error. It appears as though plaintiff asserts that the trial court erred in submitting defendant's contributory negligence Instruction No. 9 because the use of the word "handrails" was misleading. Plaintiff argues that the trial court erred in not granting his motion for a new trial because the letter "s" on the end of "handrail" implies that plaintiff ought to have been holding onto both the right and left handrails at the same time while descending the stairs.

We find no merit to this contention. "The meaning of an instruction is to be determined from its entirety and not from isolated words or phrases." *Fontana v. Davis*, 382 S.W.2d 835, 838 [2] (Mo.App. 1964). It should also be construed in light of its meaning to an average juror. *State ex rel. C.M. Burcham v. Drainage District No. 25*, 280 S.W.2d 683, 685[4] (Mo.App. 1955). Since the steps were more than four feet apart, an average juror might conclude that it was impractical to require the plaintiff to hold onto both the right and left handrails simultaneously. The jury certainly could have construed defendant's instruction to suggest that the plaintiff ought to have been holding onto one of the handrails while descending the steps.

The trial judge has the best opportunity to determine whether an instruction is misleading or confusing, and upon review, discretionary rulings thereon will not be disturbed absent some showing of abuse of discretion. *Affiliated Foods Inc. v. Strautman*, 656 S.W.2d 753, 758 [1] (Mo. App.1983). In view of the broad discretion held by the trial court, its superior position in assessing the impropriety of the instruction, and the fact that the trial court did not grant plaintiff's motion for new trial, we defer to its judgment and find no abuse of discretion

The judgment is affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.